**EXHIBIT 3**

## INVESTMENT ADVISORY SERVICES AGREEMENT

THIS INVESTMENT ADVISORY SERVICES AGREEMENT (the "Agreement") is made and executed as of the 5th day of February, 2007, by and between **Regions Bank dba Regions Morgan Keegan Trust** ("Trust") and **Morgan Asset Management, Inc.**, a registered investment adviser ("Adviser").

### RECITALS:

A.  Trust performs certain fiduciary functions and manages certain assets in various fiduciary capacities for and on behalf of its customers and requires certain investment advisory services in the performance of its duties and responsibilities in such capacities.

B.  Adviser has been established as a registered investment adviser pursuant to the provisions of the Investment Advisers Act of 1940 (15 U.S.C. 80b-1 *et seq.*), as amended by the Gramm-Leach-Bliley Act (Public Law No. 106-102) (as amended, the "Advisers Act"), for the purpose of rendering investment advisory services.

C.  Trust and Adviser desire to enter into this Agreement to document the investment advisory services to be provided by Adviser to Trust.

NOW, THEREFORE, in consideration of the premises, the covenants and agreements herein set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Trust and Adviser agree as follows:

1.  **Engagement.** Subject to the terms and conditions of this Agreement, Trust hereby engages Adviser, and Adviser hereby accepts engagement by Trust, to render advice and to perform certain services as herein described with respect to the investment of assets held in fiduciary accounts under the management of Trust, including (without limitation) the services described in Schedule I, attached hereto and made a part hereof, as the same may be amended from time to time by agreement of the parties. As compensation for Adviser's services to Trust hereunder, Adviser shall receive the compensation described in Schedule II attached hereto and made a part hereof, as the same may be amended from time to time by agreement of the parties. All compensation to be paid to Adviser hereunder shall be paid in arrears according to the terms set forth in Schedule II.

2.  **Client Accounts.** Trust and Adviser shall from time to time determine which fiduciary accounts under the management of Trust shall be subject to this Agreement (such accounts being hereinafter referred to as "Client Accounts"). With respect to each Client Account, Trust shall provide to Adviser an abstract or synopsis of the investment objectives and restrictions applicable to the Client Account (the "Objectives"), a schedule of assets held in the Client Account, a statement of the value of the Client Account, and such other information as may be necessary, useful or desirable for the performance of this Agreement, for the assessment of the investment objectives or needs of the Client Account, or for the appropriate management of the Client Account (collectively, the "Client Account Information"). Trust shall provide the Client Account Information to Adviser in such format or formats as the parties may agree and

shall update and revise the Client Account Information as the same shall change or as requested by Adviser. Trust and Adviser shall confer from time to time, as desirable in their discretion, for the purpose of sharing, interpreting and analyzing Client Account Information and effectuating the services contemplated by this Agreement with respect to the Client Accounts.

3. **Investment Advisory Services.** In addition to the services described in Schedule I, Adviser shall provide Trust with investment advice and supervision with respect to the Client Accounts and shall furnish continuously an investment program for each Client Account that is consistent with the Objectives communicated by Trust to Adviser for such Client Account. From time to time, as necessary in the course of performing this Agreement or as requested by Trust, Adviser shall make asset allocation recommendations regarding each Client Account and shall recommend securities, money market instruments, and other investments to be purchased for, or sold from, each Client Account. Adviser shall make its investment recommendations and decisions within the parameters of the investment policies established and communicated to Adviser by Trust. Adviser shall further advise and assist Trust officers in implementing investment policies established by Trust.

4. **Investment Discretion.** Trust may from time to time authorize Adviser to exercise investment discretion with respect to any Client Account and to initiate the purchase or sale of securities or other assets therefor on a transaction-by-transaction basis without prior approval from Trust; provided, that (i) Trust shall have such investment discretion according to the terms of the Client Account, (ii) all investment discretion exercised and all transactions initiated by Adviser shall be within the scope of the Trust investment policies and the Client Account Objectives communicated by Trust to Adviser, and (iii) Trust shall advise Adviser as to, and Adviser shall observe and comply with, any co-fiduciary or third party notification, approval, or consent requirements regarding transactions affecting the Client Account. In no event shall Adviser have authority to make final investment decisions for any common trust fund or collective investment fund under the management of Trust; provided, that nothing herein shall prohibit a dual employee of Trust and Adviser from making such investment decisions in his/her capacity as Trust representative who otherwise has such authority.

5. **Investment Transactions.** Adviser shall place all orders for the purchase or sale of securities for Client Accounts through brokers, dealers and other institutions approved by Trust and shall timely provide to Trust on a daily basis all information required or requested by Trust, in such format or formats as the parties may agree, regarding transactions consummated by Adviser with respect to the Client Accounts (including, without limitation, the settlement instructions, if applicable, for each transaction). TRUST ACKNOWLEDGES THAT WITH RESPECT TO "AGENCY CROSS TRANSACTIONS FOR AN ADVISORY CLIENT," AS SUCH TERM IS DEFINED UNDER RULE 206(3)-2 OF THE INVESTMENT ADVISER RULES (17 C.F.R. § 275.206(3)-2), ADVISER MAY ENGAGE A REGISTERED BROKER-DEALER THAT CONTROLS, IS CONTROLLED BY, OR IS UNDER COMMON CONTROL WITH ADVISER AND THAT, IN TRANSACTIONS HANDLED BY SUCH BROKER-DEALER, ADVISER OR SUCH BROKER-DEALER WILL ACT AS BROKER FOR, RECEIVE COMMISSIONS FROM, AND HAVE A POTENTIALLY CONFLICTING DIVISION OF LOYALTIES AND RESPONSIBILITIES REGARDING, BOTH PARTIES TO SUCH TRANSACTIONS. TRUST HEREBY CONSENTS TO AND AUTHORIZES ADVISER

TO EFFECT AGENCY CROSS TRANSACTIONS FOR TRUST; PROVIDED, THAT TRUST MAY REVOKE SUCH CONSENT AT ANY TIME UPON WRITTEN NOTICE TO ADVISER OR ITS APPLICABLE AFFILIATED BROKER-DEALER.

6. **Trust Responsibilities.** Adviser shall not have possession or custody of any securities, funds, or other assets of the Client Accounts, or any other accounts or assets managed by Trust, and Trust shall retain such possession and custody at all times while such accounts and assets are under the management of Trust. Subject to Adviser's express agreements and obligations hereunder, Trust shall be responsible for compliance with applicable law governing Trust's management and administration of the Client Accounts and with the terms and provisions of the instruments and agreements creating each Client Account ("Compliance Responsibilities"). Without limiting the generality of Trust's Compliance Responsibilities, Trust agrees, as required by Compliance Responsibilities, to:

(i) prepare and send account statements, confirmations, and custody reports to appropriate parties having interests in the Client Accounts;

(ii) settle all securities transactions for the Client Accounts;

(iii) create and maintain books and records regarding the Client Accounts (other than any books and records required under the Advisers Act or other applicable law to be created and maintained by Adviser);

(iv) prepare and file all formal accountings for court-supervised Client Accounts; and

(v) prepare and file tax returns for the Client Accounts.

7. **Adviser's Other Clients.** Trust acknowledges and agrees that this Agreement is not an exclusive agreement and that Adviser may at any time furnish to third parties, both inside and outside of Trust's market area, investment advisory services similar or dissimilar to the services contemplated by this Agreement. Trust further acknowledges that accounts under management by Adviser may have different and unique investment objectives, tax considerations, and cash availability issues and that, therefore, Adviser may sell or recommend the sale of a particular asset for certain accounts (including accounts in which Adviser or its affiliate has an interest) and may purchase or recommend the purchase of the same asset for other accounts (including accounts in which Adviser or its affiliate has an interest). To the fullest extent permitted by law, Trust consents to such actions by Adviser. Trust further acknowledges that Adviser or its affiliates may from time to time have an interest in a security, instrument or other asset the purchase or sale of which is recommended by Adviser and that Adviser may have a conflict of interest under such circumstances. Adviser shall advise Trust in writing of any known potential conflicts of interest arising out of any transaction recommended by Adviser and the capacity in which Adviser acts in such recommended transaction, and Adviser shall not complete such transaction without the consent of Trust; provided, that the parties agree that no conflict of interest shall arise as a result of the involvement of an Adviser affiliate in a transaction where such affiliate is also an affiliate of Trust and where there are no other circumstances giving rise to a conflict of interest. Adviser shall serve Trust with the ordinary

skill and diligence, and Adviser hereby disclaims any and all representations or warranties whatsoever as to the performance of any security or investment the sale or purchase of which may be recommended by Adviser. Trust acknowledges and agrees that all investment decisions made or recommended by Adviser with respect to the Client Accounts shall be solely for Trust's account and risk.

8. **Advertising.** Adviser shall have the right to review and approve in advance of use any Trust advertising or preprinted client or customer materials that mention Adviser by name or that indicate that Trust has employed Adviser. Adviser also shall have the right to review and approve any form client or customer agreements used by Trust if and to the extent such agreements would affect the scope of Adviser's legal relationship with Trust's customers and clients or Adviser's liability to such customers and clients. In each case, Adviser's approval shall not be unreasonably withheld or delayed. Trust shall have the right to review and approve in advance of use any Adviser advertising or preprinted client or customer materials that mention Trust. Trust's approval of such Adviser materials shall not be unreasonably withheld or delayed. The parties agree to comply with the Interagency Statement on Retail Sales of Non-Deposit Investment Products, Fed. Banking L. Rep. (CCH) ¶ 70-101, at 82,554 (Feb. 15, 1994), as modified or applied by subsequent interpretations of the federal banking regulators, as applicable.

9. **Term.** This Agreement shall remain in effect for automatically renewing, successive one (1) year terms, commencing on the date first above written; provided, that either party may terminate this Agreement at any time upon written notice to the other party. No termination of this Agreement shall relieve either party of its obligations hereunder which are accrued and owing as of the date of such termination.

10. **Assignment.** Neither party shall assign this Agreement without the prior written consent of the other party; provided, that Adviser may, at its own cost and expense, and in its discretion, secure assistance in the performance of its services hereunder by employing or contracting with third parties (including, without limitation, affiliates of Adviser), and such action on the part of Adviser shall not be deemed an assignment of this Agreement. In the event Adviser shall employ the services of an affiliate in performing services hereunder, Trust waives any and all claims relating to self-dealing on the part of Adviser.

11. **Other Documents.** Each of the parties agrees to sign such other and further documents as may be appropriate to carry out the intentions expressed in this Agreement.

12. **No Third Party Beneficiaries.** This Agreement shall not be construed to confer any rights or remedies upon any person not a party to this Agreement, whether as a third party beneficiary or otherwise, against Trust or Adviser, their respective successors, assigns, and affiliates.

13. **Captions and Headings.** The captions and headings contained in this Agreement are for convenience of reference only and shall not be used to limit the applicability or meaning of any provisions of this Agreement.

14. **Pronouns and Plurals**. All personal pronouns used in this Agreement, whether used in the masculine, feminine or neuter gender, shall include all other genders where the context so requires. The use of the singular form shall include the plural and the use of the plural shall include the singular where the context so requires.

15. **Severability**. If any provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby and each provision shall be valid and enforceable to the fullest extent permitted by law. It is the intent of the parties to comply in all respects with the Advisers Act and its implementing regulations, as applicable. To the extent that any investment advisory contract term or provision required by the Advisers Act or its implementing regulations has been omitted from the express provisions of this Agreement, the same is hereby incorporated herein by reference, and to the extent any term hereof conflicts with or violates the provisions of the Advisers Act or its implementing regulations, this Agreement shall be deemed automatically amended to conform to the provisions of the Advisers Act and its implementing regulations.

16. **Governing Law**. This Agreement shall governed by and construed in accordance with the laws of the State of Alabama, without regard to its conflict of laws principles, and the laws of the United States.

17. **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute only one and the same agreement.

IN WITNESS WHEREOF, Trust and Adviser have caused this Agreement to be executed under seal by their respective duly authorized representatives on the dates indicated below, to be effective as of the date first above written.

Trust:

**REGIONS BANK dba**
**REGIONS MORGAN KEEGAN TRUST**

By: _/s/ illegible_

Its: _Executive Vice President_

Date: _2-5-07_

[SEAL]

Adviser:

**MORGAN ASSET MANAGEMENT**

By: _/s/ B. B. Sullivan_

Its: _President_

Date: _2-5-7_

[SEAL]

## **SCHEDULE I**

*(Services)*

a. Assistance in annual review of assets held in Client Accounts;

b. Assistance in 60-day review of assets held in Client Accounts;

c. Assistance in review of assets prior to acceptance of new accounts that are proposed to be Client Accounts;

d. Assistance in definition of investment objectives for Client Accounts and investment policy for Trust;

e. Preparation of regularly updated list of approved securities for Client Accounts;

f. Provision of information regarding execution of transactions for Client Accounts;

g. Recommendations with respect to the voting of proxies of Client Account securities according to guidelines approved by the Trust; and

h. Provision of such other investment advisory services as mutually agreed from time to time by Trust and Adviser, whether or not set forth in this Schedule I.

i. Performing due diligence on Morgan Keegan investment products, e.g. separate account platform, annually and making a report to Trust of findings.

## **SCHEDULE II**

*(Adviser Compensation)*

Trust agrees to compensate Adviser in the amount of $8,250,000 annually, payable in arrears and in substantially equal monthly installments.