# EXHIBIT A-1

## AMENDED MEMORANDUM OF UNDERSTANDING IN *LANDERS* DERIVATIVE ACTION

I. **Disposition of §§ 11 and 10(b) Claims Against Funds**

1. Helios Select Fund, Inc. and its three series, Helios Select High Income Fund, Helios Select Intermediate Bond Fund, and Helios Select Short Term Fund ("Funds") are defendants in a putative class action, *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, No. 2:07-cv-02784-SHM-dkv, United States District Court, Western District, Tennessee ("*Open-End Fund Litig.*"), on Counts I (Securities Act of 1933 § 11) ("§ 11 Claim") and V (Securities Exchange Act of 1934 § 10(b) and Rule 10b-5 thereunder)("§ 10(b) Claim"). On November 30, 2010, the Funds filed a Memorandum of Understanding ("MOU") with the Court in *Landers v. Morgan Asset Management, Inc.*, No. 2:08-cv-02260-SMH-dvk, United States District Court, Western District, Tennessee ("*Landers Action*"). The MOU set forth agreements reached by the Funds and the Plaintiffs in the *Landers Derivative Action* and the Plaintiffs in the *Open-End Fund Litig.* The MOU hereby is amended by, and restated in its entirety in, this Amended Memorandum of Understanding ("AMOU"). As relevant herein, the Court has dismissed Count V of the Consolidated Amended Class Action Complaint ("CAC") in the *Open-End Fund Litig.*, denied Plaintiffs' motion for reconsideration of the dismissal of the § 10(b) Claim, and permitted Count I of the CAC to proceed.

2. The new board of directors of the Funds ("New Board") has investigated whether to pursue claims against certain of the defendants in the *Landers Action*. Upon approval hereof, the *Landers Action* shall proceed with the Funds as plaintiffs.

3. Without admitting or denying liability but consenting to the Court's jurisdiction, judgment is to be entered against only the Funds on the § 11 claim against them in the *Open-End Fund Litig.*, placing the putative class in the position of a judgment creditor of the Funds.

4. The judgment debt is to be satisfied solely out of any recovery by the Funds on their claims in the *Landers Action* ("*Landers* Recovery") and shall share therein on only a *pro rata* basis if the New Board determines to adopt a *pro rata* distribution of any such recovery (*see* I.6 below).

5. Satisfaction of said judgment from the *Landers* Recovery is subject to the following provisos:

   a. Certification of a settlement class or classes as to the § 11 claim against the Funds;

   b. The amount of the § 11 class claim damages ("§ 11 Damages") in the *Open-End Fund Litig.* shall be established in accordance with a calculation made by counsel pursuant to the 1933 Act § 11, with or without an expert, shall be subject to approval by both the New Board and the Court, shall not be subject to prejudgment interest, and shall be based on the certified class.

6. In accordance with the pending Verified Shareholders' First Amended Derivative Complaint ("FADC"), it is recognized that the following groups of shareholders of the Funds have claimed interests in any *Landers* Recovery: (i) those who are members of a class that obtains a judgment against the Funds through the pending class action (including the judgment in the *Open-End Fund Litig.* under 1933 Act § 11 against the Funds, as contemplated herein) and a judgment on the class claim in said litigation under 1934 Act § 10(b) against the Funds (if such claim is revived as a result of any further motion for reconsideration by Lead Plaintiffs in the *Open-End Fund Litig.* of the Court's dismissal of said claim, or as a result of any appeal from any final judgment that may be entered with respect to said dismissal, or otherwise, also as contemplated herein), (ii) the liquidating shareholders, and (iii) shareholders whose losses are not recoverable in the class action under the 1933 Act. FADC ¶¶ 4, 5, 876 (constructive trust to avoid windfall recoveries). It is further recognized that in the event of a *Landers* Recovery, consideration shall be given to the *pro rata* distribution thereof among said groups, subject to the following provisos:

   a. The allocation and/or distribution of any *Landers* Recovery shall be subject to approval by the New Board, with advice of counsel, with or without an expert, and shall also be subject to Court approval;

   b. For purposes of such allocation, the amount of damages in the *Landers Action* ("*Landers* Damages") shall be established in accordance with a calculation made by counsel, with or without an expert, shall be subject to approval by both the New Board and the Court, and shall not be subject to prejudgment interest;

   c. As to shareholders who purchased shares before and during the § 11 Class Period and redeemed shares during the § 11 Class Period, the shares shall be deemed to have been redeemed on a first-in-first-out basis;

7. To avoid "double recovery," the amounts recoverable by the § 11 class from any *Landers* Recovery shall be reduced dollar for dollar by any recovery by the § 11 class from the defendants other than the Funds pursuant to § 11 in the *Open-End Fund Litig.*

8. If the class obtains a recovery from defendants other than the Funds under both §§ 11 and 12(a)(2) of the Securities Act of 1933 in the *Open-End Fund Litig.*, and if the § 12(a)(2) recovery exceeds the § 11 recovery, any allocation ratio employed pursuant to ¶ 6 shall be based on the § 11 recovery without regard to § 12(a)(2), and the § 11 recovery shall be the basis for the reduction described in ¶ 7.

9. The purchases and redemptions of the Funds' shares by MK Properties or any other affiliates of MK excluded from the class defined at CAC ¶¶ 106-07, on their own behalf, during the period August through December 2007 (or, if made, thereafter) are excluded from all of the above.

10. In the event of a settlement of:

   a. The *Landers Action* but not the *Open-End Fund Litig.*, the allocation of any

      *Landers* Recovery with respect to the § 11 Damages would be determined as provided in ¶¶ 5 – 9.

  b. The *Open-End Fund Litig.* but not the *Landers Action*, the allocation of any *Landers* Recovery with respect to the § 11 Damages would be determined as provided in ¶¶ 5 – 7 and 9 (it being assumed any *Open-End Fund Litig.* settlement would not distinguish between § 11 and § 12(a)(2) damages).

  c. Should there be a settlement of one but not both actions, the New Board, with advice of counsel, in the *Landers Action*, and the class representatives, with advice of counsel, in the *Open-End Fund Litig.*, shall consider whether it would be advisable to defer distribution of such settlement pending resolution of the other action. Any such deferral shall be subject to the Court's approval.

11. In the event the pending regulatory actions against some of the defendants other than the Funds result in a fund to be allocated among investors in the Funds and the former RMK closed-end funds, a determination shall be made whether, and to what extent, any such fund shall be considered or included in any allocation and distribution pursuant to ¶ 6 above. This determination shall be made in consideration of, *inter alia*, whether the regulatory fund is a proper set-off to any damages in either the *Open-End Fund Litig.* or the *Landers Action* in view of, *e.g.*, the substantive and temporal scope of those actions, the manner of allocation prescribed by the regulators, and the determination as to who may participate in any such fund. Nothing herein shall preclude the New Board from considering other sources of recovery, if any, in connection with any allocation or distribution in ¶ 6 above.

12. In the event the § 10(b) Claim is reinstated in the *Open-End Fund Litig.*, and the Court further determines that persons holding the Funds' shares as of a specified date have standing to assert the § 10(b) Claim under CAC Count V, such § 10(b) damages ("§ 10(b) Damages") may be the same as the *Landers* Damages determined pursuant to ¶ 6 and may totally or partially overlap the § 11 Damages. Accordingly, to the extent that the § 10(b) Damages do not totally overlap § 11 Damages, only the portion of the § 11 Damages not overlapped by the § 10(b) Damages would be taken into account in the allocation of a *Landers* Recovery (including compensatory, exemplary, if any, and other damages, if any, and any attorneys' fees that may be awarded pursuant to statute or otherwise in addition to such damages) based on § 11 Damages.

13. Should the § 10(b) Claim be reinstated against the Funds as pleaded or in some other form, the arrangement agreed to with respect to the disposition of the § 11 Claim against the Funds provided for herein shall be applied to any such revived § 10(b) Claim (CAC Count V) against the Funds (i.e., judgment against the Funds on said § 10(b) Claim in Count V without admitting or denying liability), including the arrangement for the allocation of any *Landers* Recovery pursuant to ¶¶ 6-12 above, and if determined to be appropriate, dismissal of the former independent directors without prejudice.

14. The governing principles shall be to seek the largest possible recovery for the greatest number of persons who suffered losses in connection with their investments in the Funds and to treat all such persons in the fairest and most equitable manner possible.

15. It is contemplated that any application for court approval of any allocation and/or distribution shall include releases to the Funds, their advisors, and the New Board.

**II. Proposal for Disposition of Breach of Fiduciary Duty Claim against Former Independent Directors in the *Landers Action***

The following is a proposal for the disposition of the breach of fiduciary duty claim in the *Landers Action* against the former independent directors of the Funds:

1. Kevin Logue, counsel for the New Board, has reviewed with Derivative Plaintiffs' counsel the evidence that supports the New Board's decision to dismiss claims against the Funds' former independent directors.

2. Following the Court's preliminary approval of the initial MOU on December 6, 2010, Derivative Plaintiffs' counsel began their review of additional materials in the custody or possession of the Funds and the Funds' counsel (solely in their role as Funds' counsel) reasonably deemed relevant by Derivative Plaintiffs' counsel to the New Board's determination, including but not limited to:

    a. board materials, reports (*e.g.*, liquidity, valuation, compliance) to board from MAM/MK, minutes, auditor, pricing services, *etc.*;

    b. New Board's and/or Brookfield Investment Management Inc.'s ("BIM") investigation re PwC's withdrawal of its reports on certain closed-end funds' 2006-2007 financial statements;

    c. Paul Hastings' attorney work product shared with the New Board and Paul Hastings' advice to the New Board in connection with the New Board's investigation. Such review or information sharing discussed in this Section II, and any further information sharing in the course of Derivative Plaintiffs' Counsel's representation of the Funds, has been and shall be accomplished in a manner intended to preserve any attorney-client privilege or work product privilege, including any such protection of any other funds or entities. Derivative Plaintiffs agree that they will not claim a waiver of any such privileges or protections based on such information exchange. Derivative Plaintiffs further acknowledge that, through the course of the Derivative Plaintiffs' representation of the Funds pursuant to the terms of this AMOU, it is contemplated that Paul Hastings shall continue to advise the New Board on various matters, including but not limited to matters related to this AMOU and the pending litigations and other matters addressed herein. It is expressly acknowledged that Paul Hastings may advise the New Board in the event that conflict questions or actual conflicts may arise between the interests of Derivative Plaintiffs or any other party represented by Derivative Plaintiffs' Counsel on the one hand, and the Funds, the New Board or BIM on the other hand. Nothing herein shall

require either the New Board or Paul Hastings to disclose such communications, or any other communications between Paul Hastings and the New Board, the Funds, BIM or other counsel to same. In addition, Derivative Plaintiffs and their counsel acknowledge that the Independent Directors on the New Board have separate counsel, and that such counsel will not be asked to turn over materials or work product, and that they will not claim any invasion or waiver of any privilege or protection of same.

3. Any such dismissal of the former independent directors shall be without prejudice and shall be conditioned upon the ability to withdraw the dismissal in the event of subsequent discovery of new evidence of reckless or other non-exculpated conduct (*e.g.*, from SEC investigation or the discovery in the *Landers Action* or *Open-End Fund Litig.*) or additional evidence that, taken with the evidence reviewed pursuant to ¶¶ 1 and 2 above, provides a reasonable basis for concluding that a meritorious case can be made that the Funds' former independent directors engaged in reckless or other non-exculpated conduct.

The negotiation with counsel for the former independent directors of any such dismissal without prejudice of the former independent directors shall be deferred until after the final Court approval sought herein and Derivative Plaintiffs' counsel have had further access to information as set out in II.2 above and after further opportunity to confer with the New Board.

4. Before making any decision to reinstitute any such dismissed breach of fiduciary duty claim against the former independent directors, the Funds shall be satisfied, based upon advice from legal counsel other than the Derivative Plaintiffs' counsel but in consultation with Derivative Plaintiffs' counsel, that doing so does not expose the Funds to advancement of expenses or to indemnification of the former independent directors on any judgment against them under Maryland law or the Funds' articles or bylaws.

5. Any such dismissal is explicitly limited to the *Landers Action* and does not include the *Open-End Fund Litig.*, including the dismissed claims pursuant to §§ 10(b) and 20 of the Securities Exchange Act of 1934 should they be revived.

6. The dismissal shall explicitly exclude any bar to contribution claims and must address any other comparative/proportionate fault issues under Maryland or Tennessee law, as appropriate—*i.e.*, the dismissal is not to sever the joint and several liability of the individual and corporate defendants on the breach of fiduciary duty claims in the *Landers Action*:

    a. Any tolling agreement with a former independent director shall include claims for contribution or indemnification by other defendants.

    b. The Funds would be able to withdraw the dismissal and reinstitute the breach of fiduciary duty claim against the former independent directors if a court determines that such dismissal did break what would be, in the absence of such

dismissal, the joint and several liability of the other defendants, or if the other defendants successfully argue that the former independent directors' comparative fault exceeds a specified percentage notwithstanding exculpation, after obtaining satisfaction on the indemnification issue addressed in ¶ 4.

7. Any such dismissal shall be done pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure and, as may be applicable, Rule 23.1(c), or in the event the New Board determines to seek Court approval.

## III. Fees

1. Derivative Plaintiffs' counsel's fees shall be a sliding scale contingent fee:
   - 20% of the first $250 million of any *Landers* Recovery;
   - 17.5% of the excess of any *Landers* Recovery over $250 million up to $500 million;
   - 15% of the excess of any *Landers* Recovery over $500 million.

2. Said fee and the payment thereof shall be subject to the approval of the Court.

3. It is contemplated that Paul Hastings will from time to time consult with the New Board following their being replaced by Derivative Plaintiffs' counsel pursuant hereto, or otherwise be involved to the extent that certain logistic or other such matters may require its involvement arising from its role as the counsel to the Funds heretofore in this litigation, including serving as stand-by counsel to consult with the New Board in the event of a future conflict in connection with the representation of the Funds in the *Landers Action* by Derivative Plaintiffs' counsel.

   a. Paul Hastings will be compensated on an hourly basis for such work out of the Reserve (as defined herein) to the extent that such fund exceeds $500,000;

   b. To the extent that such fund is inadequate for such purpose, Paul Hastings shall be compensated out of the *Landers* Recovery as follows:

      i. one-half of Paul Hastings fees shall be paid from that portion of the contingent fee, if any, to be paid to Derivative Plaintiffs' counsel attributable to the *Landers* Recovery in excess of the portion thereof allocated to satisfaction of the § 11 judgment pursuant to paragraph I.3. above (the "Non-§ 11 Allocable Portion of the *Landers* Recovery") and

      ii. one-half from the remaining Non-§ 11 Allocable Portion of the *Landers* Recovery,

      iii. in each case together with a premium to be determined and approved by the New Board in its sole discretion, subject only to approval of the Court, and provided further that, absent leave of court, such "premium," when added to the outstanding fees billed by Paul Hastings and to be paid from any recovery in the *Landers Action*, shall not exceed in

the aggregate 120% of Paul Hastings' standard hourly billed rates.

4. Expenses; Liquidation Reserve Fund

   a. The balance in the Liquidation Reserve Fund ("Reserve") as of November 30, 2010 was approximately $750,000.

   b. Following the payment of outstanding payables as of November 30, 2010, $500,000 of the Reserve shall be used exclusively to pay for, or to reimburse counsel for paying, expenses incurred in the prosecution of the *Landers Action*, subject to the approval of the New Board. Such expenses shall not include counsel's travel and other firm-specific expenses (e.g., copies) but shall include experts, court reporters for depositions, deposition transcripts, and mediators. Derivative Plaintiffs' counsel estimate that the expenses to be incurred in connection with the prosecution of this action are likely to exceed $1 million.

   c. To assist the New Board in assessing whether any expenses of the Funds incurred in the *Landers Action* or any related investigation may be recovered from MAM, MK, Regions Bank or Regions Financial under indemnification agreements with those defendants in connection with the acquisition of the investment advisory agreements for the Funds from MAM, following the engagement of Derivative Plaintiffs' counsel as counsel for the Funds in the *Landers Action*, the Funds and BIM shall furnish to Derivative Plaintiffs' counsel all agreements and understandings, written or otherwise, between BIM and/or the Funds, on the one hand, and MK, MAM, and/or RF, on the other hand, or any affiliate of the foregoing, related to such acquisition.

5. Scope of Representation

   a. This fee arrangement relates to Derivative Plaintiffs' counsel's representation of the Helios Select Fund, Inc. and its three series (Helios Select High Income Fund, Helios Select Intermediate Bond Fund, and Helios Select Short Term Fund) in the *Landers Action* with respect to the claims asserted in the FADC against the defendants identified in the FADC, subject to any dismissal and the judgment provided for herein and subject to such amendments thereto as the New Board shall deem appropriate and the Court shall approve as required.

   b. Derivative Plaintiffs' counsel, without their prior consent, do not undertake to represent the Funds in connection with claims not asserted in the FADC (except as the FADC may be amended pursuant to III.4.a.) against persons not identified in the FADC, provided that, if additional defendants are named in the CAC in the *Open-End Fund Litig.*, (and presently identified therein as "John Does" (CAC ¶ 87)), Derivative Plaintiffs' counsel shall agree to include such persons as defendants in the *Landers - Action* with the agreement of the New Board.

6. The engagement agreement shall be governed by Tennessee law.

**IV. Miscellaneous.** This Amended Memorandum of Understanding is subject to the approval of the Court under Rules 23 and 23.1 of the Federal Rules of Civil Procedure and to such modifications as the Court may deem necessary and appropriate.

Dated as of June 21, 2011:

**For the Estate of Kathryn S. Cashdollar, Dajalis Ltd., Jeanette H. Landers, H. Austin Landers, and Frank D. Tutor, Lead Plaintiffs in *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, No. 2:07-cv-02784-SHM-dkv, United States District Court, Western District, by their counsel, as to the portions hereof related to said litigation:**

HEAD, SEIFERT & VANDER WEIDE, P.A.

*/s/ Vernon J. Vander Weide*

Vernon J. Vander Weide
Thomas V. Seifert
333 South Seventh Street, Suite 1140
Minneapolis, MN 55402-2422
Telephone: 612-339-1601
Fax: 612-339-3372
vvanderweide@hsvwlaw.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

*/s/ Gregg Fishbein*

Richard A. Lockridge
Gregg M. Fishbein
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
gmfishbein@locklaw.com

*Co-Lead Counsel for Lead Plaintiffs*

APPERSON CRUMP, PLC

*/s/ Jerome A. Broadhurst*

Jerome A. Broadhurst, TN BPR 12529
Charles D. Reaves, TN BPR 22550
6070 Poplar Avenue, Sixth Floor
Memphis, TN 38119-3954
Telephone: (901) 260-5133
Fax: (901) 435-5133
jbroadhurst@appersoncrump.com

*Liaison Counsel for Lead Plaintiffs*

**For H. Austin and Jeanette H Landers, the Estate of Charles M. Crump, James H. Frazier, Diana W Crump, and James P. and Peggy C. Whitaker, Derivative Plaintiffs in *Landers v. Morgan Asset Management, Inc.*, No. 2:08-cv-02260-SMH-dkv, United**

-8-

States District Court, Western District, by their counsel, as to the portions hereof related to said litigation:

| HEAD, SEIFERT & VANDER WEIDE, P.A. | LOCKRIDGE GRINDAL NAUEN P.L.L.P. |
|---|---|
| *(signed)* | *(signed)* |
| Vernon J. Vander Weide<br>Thomas V. Seifert<br>333 South Seventh Street, Suite 1140<br>Minneapolis, MN 55402-2422<br>Telephone: 612-339-1601<br>Fax: 612-339-3372<br>vvanderweide@hsvwlaw.com | Richard A. Lockridge<br>Gregg M. Fishbein<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401<br>Tel: (612) 339-6900<br>Fax: (612) 339-0981<br>gmfishbein@locklaw.com |
| ZIMMERMAN REED, P.L.L.P. | APPERSON CRUMP PLC |
| *(signed)* | *(signed)* |
| Carolyn G. Anderson<br>Patricia A. Bloodgood<br>Kirsten D. Hedberg<br><br>1100 IDS Center<br>80 South 8th Street<br>Minneapolis, MN 55402<br>Telephone: 612-341-0400<br>Fax: 612-341-0844<br>cga@zimmreed.com | Jerome A. Broadhurst, TN BPR 12529<br>Charles D. Reaves, TN BPR 22550<br>6070 Poplar Avenue, Sixth Floor<br>Memphis, TN 38119-3954<br>(901) 260-5133 direct<br>(901) 435-5133 fax<br>jbroadhurst@appersoncrump.com |

*Attorneys for Derivative Plaintiffs*

-9-

For themselves as to their engagement pursuant hereto by Helios Select Fund, Inc., a Maryland corporation formerly known as Morgan Keegan Select Fund, Inc., and its three series/portfolios, Helios Select Short Term Bond Fund (formerly known as Regions Morgan Keegan Select Short Term Bond Fund), Helios Select Intermediate Bond Fund (formerly known as Regions Morgan Keegan Select Intermediate Bond Fund), and Helios Select High Income Fund (formerly known as Regions Morgan Keegan Select High Income Fund):

HEAD, SEIFERT & VANDER WEIDE, P.A.

*/s/ Vernon J. Vander Weide*

Vernon J. Vander Weide
Thomas V. Seifert
333 South Seventh Street, Suite 1140
Minneapolis, MN 55402-2422
Telephone: 612-339-1601
Fax: 612-339-3372
vvanderweide@hsvwlaw.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

*/s/ Gregg Fishbein*

Richard A. Lockridge
Gregg M. Fishbein
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
gmfishbein@locklaw.com

ZIMMERMAN REED, P.L.L.P.

*/s/ Carolyn G. Anderson*

Carolyn G. Anderson
Patricia A. Bloodgood
Kirsten D. Hedberg
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-341-0400
Fax: 612-341-0844
cga@zimmreed.com

APPERSON CRUMP PLC

*/s/ Jerome A. Broadhurst*

Jerome A. Broadhurst, TN BPR 12529
Charles D. Reaves, TN BPR 22550
6070 Poplar Avenue, Sixth Floor
Memphis, TN 38119-3954
(901) 260-5133 direct
(901) 435-5133 fax
jbroadhurst@appersoncrump.com

For Helios Select Fund, Inc., a Maryland corporation formerly known as Morgan Keegan Select Fund, Inc., and its three series/portfolios, Helios Select Short Term Bond Fund (formerly known as Regions Morgan Keegan Select Short Term Bond Fund), Helios Select Intermediate Bond Fund (formerly known as Regions Morgan Keegan Select Intermediate Bond Fund), and Helios Select High Income Fund (formerly known as Regions Morgan Keegan Select High Income Fund), as to Helios Select Fund's engagement of the law firms identified above pursuant hereto:

By _____

Kim G. Redding, President of Helios Select Fund, Inc.

-10-

For themselves as to their engagement pursuant hereto by Helios Select Fund, Inc., a Maryland corporation formerly known as Morgan Keegan Select Fund, Inc., and its three series/portfolios, Helios Select Short Term Bond Fund (formerly known as Regions Morgan Keegan Select Short Term Bond Fund), Helios Select Intermediate Bond Fund (formerly known as Regions Morgan Keegan Select Intermediate Bond Fund), and Helios Select High Income Fund (formerly known as Regions Morgan Keegan Select High Income Fund):

HEAD, SEIFERT & VANDER WEIDE, P.A.

_____
Vernon J. Vander Weide
Thomas V. Seifert
333 South Seventh Street, Suite 1140
Minneapolis, MN 55402-2422
Telephone: 612-339-1601
Fax: 612-339-3372
vvanderweide@hsvwlaw.com

ZIMMERMAN REED, P.L.L.P.

_____
Carolyn G. Anderson
Patricia A. Bloodgood
Kirsten D. Hedberg
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-341-0400
Fax: 612-341-0844
cga@zimmreed.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

_____
Richard A. Lockridge
Gregg M. Fishbein
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
gmfishbein@locklaw.com

APPERSON CRUMP PLC

_____
Jerome A. Broadhurst, TN BPR 12529
Charles D. Reaves, TN BPR 22550
6070 Poplar Avenue, Sixth Floor
Memphis, TN 38119-3954
(901) 260-5133 direct
(901) 435-5133 fax
jbroadhurst@appersoncrump.com

For Helios Select Fund, Inc., a Maryland corporation formerly known as Morgan Keegan Select Fund, Inc., and its three series/portfolios, Helios Select Short Term Bond Fund (formerly known as Regions Morgan Keegan Select Short Term Bond Fund), Helios Select Intermediate Bond Fund (formerly known as Regions Morgan Keegan Select Intermediate Bond Fund), and Helios Select High Income Fund (formerly known as Regions Morgan Keegan Select High Income Fund), as to Helios Select Fund's engagement of the law firms identified above pursuant hereto:

By _____
Kim G. Redding, President of Helios Select Fund, Inc.

For Helios Select Fund, Inc., a Maryland corporation formerly known as Morgan Keegan Select Fund, Inc., and its three series/portfolios, Helios Select Short Term Bond Fund (formerly known as Regions Morgan Keegan Select Short Term Bond Fund), Helios Select Intermediate Bond Fund (formerly known as Regions Morgan Keegan Select Intermediate Bond Fund), and Helios Select High Income Fund (formerly known as Regions Morgan Keegan Select High Income Fund), (i) nominal defendant/defendants in *Landers* v. *Morgan Asset Management, Inc.*, No. 2:08-cv-02260-SMH-dkv, United States District Court, Western District, by their counsel, as to the portions hereof related to said litigation, and (ii) defendant/defendants in *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, No. 2:07-cv-02784-SHM-dkv, United States District Court, Western District, by their counsel, as to the portions hereof related to said litigation:

PAUL, HASTINGS, JANOFSKY & WALKER LLP

_____
Kevin C. Logue
75 East 55th Street
New York, New York 10022
Tel: (212) 318-6000
Fax: (212) 319-4090
kevinlogue@paulhastings.com
asadanes@paulhastings.com
*Attorneys for Defendants Helios Select Fund, Inc., Helios Select Short Term Bond Fund, Helios Select Intermediate Bond Fund and Helios Select High Income Fund (formerly Morgan Keegan Select Fund, Inc., Regions Morgan Keegan Select Short Term Bond Fund, Regions Morgan Keegan Select Intermediate Bond Fund and Regions Morgan Keegan Select High Income Fund, respectively)*