I**N THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE & ERISA LITIGATION | No. 09-md-02009-SHM |
| This Document Relates to: | |
| *In re Regions Morgan Keegan Closed-End Fund Litigation*, | |
| No. 07-cv-02830 SHM dkv | |

**LEAD PLAINTIFFS' RESPONSE TO SECOND**
**OBJECTION OF W. ALLEN McDONALD**

On January 4, 2013, this Court entered an order granting preliminary approval to the Settlement in this class action. ECF No. 276 (the "Preliminary Approval Order"). In the Preliminary Approval Order, the Court ordered that the Settlement Agreement be posted on the case-dedicated website by January 18, 2013. *Id.* ¶¶ 4-5. The Court further ordered that Lead Counsel file submissions in support of its motion for an award of attorneys' fees and payment of expenses on March 8, 2013. *Id.* ¶ 10. The Court further ordered that any objections to the matters to be considered during the Settlement Hearing, including any objections to the motion for fees, to be filed and served by March 22, 2013. *Id.* ¶ 8.

Thereafter, and pursuant to the Preliminary Approval Order, Lead Plaintiffs caused nearly 100,000 Notices to be sent to potential Class members, and filed a motion requesting reasonable attorneys' fees and expenses. ECF Nos. 302-303 (the "Fee Motion"); ECF No. 315, at 8; ECF No. 316-9. The Court received five objections, including one from W. Allen McDonald. ECF Nos. 282, 288, 292, 297-7, 300. On April

2, 2013, Lead Plaintiffs filed an omnibus response to the objections and associated submissions filed or received to that point.  ECF No. 296.

In Mr. McDonald's original objection (ECF No. 300), he devoted two paragraphs to Lead Counsel's fee and expense request; much of his objection was spent discussing the data needed to submit a proof of claim against the Net Settlement Fund.  After the objection was filed, Lead Plaintiffs' counsel contacted counsel for Mr. McDonald and explained that for Morgan Keegan brokerage clients such as Mr. McDonald, Morgan Keegan would generate a transaction report that Mr. McDonald could submit with his proof of claim.  Counsel for Lead Plaintiffs subsequently obtained this transaction report from counsel for the Morgan Keegan Defendants and provided it to counsel for Mr. McDonald, thus addressing Mr. McDonald's principal concern and rendering moot the heart of his objection.

Nonetheless, Mr. McDonald filed an additional, second objection on April 10, 2013, *19 days after* the deadline to submit objections and only *two days before* the Settlement Hearing set for tomorrow, April 12.  ECF No. 307 (the "Second McDonald Objection").  Mr. McDonald did not seek leave of this Court to file this untimely, second objection, nor has the Court granted Mr. McDonald an extension of time under the Preliminary Approval Order.  The Second McDonald Objection incorporates all of the Christenson's contentions and arguments by reference, and then objects further to Lead Counsel's motion for fees and expenses.  The Second McDonald Objection is untimely and without merit in any event, and should be overruled.

## ARGUMENT

**A.      Class Members Had Ample Time to Respond to the Fee Motion and the Second McDonald Objection Is Untimely Without Justification**

Cognizant of the fact that he filed his second objection 19 days after the deadline to file objections with the Court, Mr. McDonald spends several pages attempting to justify his failure to timely file a complete objection to the Fee Motion. ECF No. 307 at 3-6.

First, Mr. McDonald incorrectly claims that he did not receive proper notice of the Fee Motion. Mr. McDonald's counsel was on notice from the Notice and the Preliminary Approval Order that Lead Counsel intended to seek a fee of 30% plus expenses, and that the Fee Motion would be publicly filed with the Court on March 8, 2013, two weeks before the deadline for Class members to file objections. Mr. McDonald's counsel has access to PACER[1], and Lead Counsel was under no obligation to post the Fee Motion on the Internet. Mr. McDonald does not state when he obtained the Fee Motion, nor does he provide any justification for failing to follow the instructions in the Notice if he wished to review additional materials or felt that more information was necessary to determine whether to object, opt out or remain in the Class. The Court should not countenance Mr. McDonald's counsel's manufactured problem.

Second, Mr. McDonald makes the absurd argument that two weeks is insufficient time to review the Fee Motion and urges the Court to postpone the hearing. McDonald Second Obj. at 4-5. This argument fails in light of the Court's Local Rules, which provide that responses to ordinary motions, such as the Fee Motion, are due 14 days after filing, and the provisions of the Preliminary Approval Order which sets forth the same

---

[1] It appears that the reason Mr. McDonald's original objection was not timely noted on the docket in this action is because Mr. McDonald's counsel is not admitted to the bar of the U.S. District Court for the Western District of Tennessee and was thus unaware of the Court's rule mandating electronic filing. It further appears that Mr. McDonald's counsel, as of the date hereof, has not sought to be admitted to the bar of this Court or to be admitted pro hac vice.

deadline to file objections.  *See* W.D. Tenn. Civ. L.R. 7.2(a)(2); Preliminary Approval Order ¶ 14.  Moreover, Mr. McDonald offers no argument or evidence as to how he was prejudiced by this 14-day window, nor does he offer any reason why he did not seek additional time.  Whereas the Court already acknowledged in its order denying another objection, delaying the final fairness "substantially prejudice[s]" the original parties to this action.  ECF No. 309 at 14. And it is now more than a month since the Fee Motion was filed, and Mr. McDonald has offered no evidence, no declarations, and no proof— expert or otherwise—that would suggest that the requested fee or expenses are unreasonable or excessive.

It appears that Mr. McDonald waited until two days before the Settlement Hearing to file his Second Objection and claim he needed more time to respond to the Fee Motion in order to put pressure on Lead Counsel to pay him in return for Mr. McDonald's agreement to withdraw his objections.  The Court should not countenance such tactics and should disallow the Second McDonald Objection as untimely.  *See*, *e.g.*, *Association for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 476 (S.D. Fla. 2002) ("Given that the objections are extraordinarily untimely, that no valid excuse has been shown, and that substantial prejudice to the parties would result, they are denied."); *Manners v. American Gen. Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22880, at *72 (M.D. Tenn. 1999) (overruling class members second untimely filed objections because class members filed the objections late and failed to justify why the new ground for objection was not included in original submission); *In re Centocor, Inc. Sec. Litig.*, 1993 U.S. Dist. LEXIS 7229, at *10 n.5 (E.D. Pa. June 2, 1993) (refusing to consider late objections).

**B.      The Requested Attorneys' Fee Is Not Excessive and Is Consistent With Sixth Circuit Law**

Even if the Court were to consider the untimely filed Second McDonald Objection, it is without merit.  As stated in the Fee Motion and in Plaintiffs' Response to the Objections (ECF No. 296), the requested fee is well within the range considered reasonable within the Sixth Circuit, and Mr. McDonald fails to offer with any factual or legal support suggesting otherwise.

*1.      The Percentage-of-Fund Method Is the Proper Method to Calculate A Reasonable Fee in This Case*

As detailed in the Fee Motion, in this Circuit, the ease of application and benefit of the percentage-of-fund method make it "the current prevailing method in securities class actions."  *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007); *see also* ECF No. 303 at 6-8 (discussing preference of Sixth Circuit to use percentage-of-fund method and collecting cases supporting this position).

The Second McDonald Objection does not reasonably challenge this approach or even confront the mountain of case law in this Circuit that holds that the percentage-of-fund approach is the preferred method of determining attorneys' fees in securities litigation.  *See e.g.*, ECF No. 303 at 6 (collecting cases).  Indeed, the Second McDonald Objection concedes, as it must, that the percentage-of-fund approach is appropriate in this case.  Second McDonald Objection at 9.

Accordingly, for the reasons discussed in the Fee Motion, the Court should use the percentage-of-fund method in determining a reasonable attorneys' fee to be paid to Lead Counsel.

2.      *The Requested Fee Is Not Excessive Merely Because it Would Yield a Multiplier of Approximately Three Times Lodestar*

Having to concede that the percentage-of-fund approach is the appropriate method to calculate a fee award, the Second McDonald Objection turns to challenging the requested 30% fee award.  However, the Second McDonald Objection ignores the Sixth Circuit case law that holds that "courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) ("[T]he requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions."); ECF No. 303 at 9 n.4 (collecting additional cases).

Moreover, the Second McDonald Objection provides no evidence to rebut the declarations submitted by Lead Counsel in support of the Fee Motion that state that a 30% fee award "is in line with percentages awarded by other courts in the Sixth Circuit." ECF No. 303-10, ¶ 12 (Fitzpatrick Declaration); *see also* ECF Nos. 303-11, ¶ 9 (Declaration of George Barrett), 303-12, ¶ 2 (Declaration of Van Turner), 303-13, ¶ 4 (Declaration of John Ryder).

Instead, the Second McDonald Objection cites a single case from the District Court in Michigan, relying on precedent from the Ninth and Third Circuits, which suggested in *dicta* that a 25% award is a "benchmark."  Second McDonald Objection at 10.  Nevertheless, the court in that case concluded that the range of reasonableness typical in common fund cases ranges from 20-30%, and courts in this jurisdiction

regularly award 30% fee awards in common fund cases.  *See*, *e.g.*, *Thacker*, 695 F. Supp. 2d at 528 (awarding thirty percent of settlement fund despite objection claiming a 21% award was appropriate); *Miracle v. Bullitt County*, 2008 U.S. Dist. LEXIS 94217, 2008 WL 4974799 (W.D. Ky. Nov. 19, 2008) (approving fee award of 30%).

Lead Counsel provided robust factual and legal support for its position that a 30% fee award is appropriate under all of these relevant circumstances.   The Second McDonald Objection cites only a single case claiming a 25% award is appropriate and provides no evidence challenging the four declarations submitted by Lead Counsel or the factual basis supporting a 30% fee award.

3.    *The Record Supports the Reasonableness of the Requested Fee Because the Results Obtained Are Exceptional and the Amount of Time Expended By Counsel Is Reasonable*

Contrary to Mr. McDonald's contention, the results obtained in the settlement are exceptional and do not "pale in comparison to the actual damages suffered by Class Members."  Mr. McDonald offers no proof, no evidence of what Mr. McDonald believes the actual damages may be.  In fact, Mr. McDonald basically adopts another Objection for the basis of this argument, an objection which this Court just yesterday disallowed. ECF. No. 309.

As detailed in Plaintiffs' final approval papers, the $62 million settlement represented between 18.2 and 37.2 percent of the estimated damages suffered by Class Members, depending on the damages model used.  ECF. No. 301 at 6-8.  A $62 million settlement and an 18.2 percent recovery of total damages is consistent with and indeed well above the average recovery for securities cases.  ECF. No. 301 at 6-7 (detailing Cornerstone study showing the average recovery in settlement for securities cases is 1.2-

3.3% of total damages, depending on the size of the settlement).  The Second McDonald Objection never confronts the study or evidence cited by Plaintiffs' in support of the settlement.

Additionally, the Second McDonald Objection never confronts the significant barriers to ultimate recovery by Plaintiffs including risks associated with proving: 1) loss causation and damages; 2) that the Funds made material misrepresentations and acted with intent; and 3) that Morgan Keegan and RFC were controlling persons of the Funds. ECF. No. 301 at 9-16.  Indeed, the Second McDonald Objection appears to rest on the idea that on the notion that victory was all but guaranteed once the Complaint survived Defendant's motion to dismiss.  In fact, as the Court noted at the Preliminary Approval Hearing, the findings that lead to the denial of the motion to dismiss were "for purposes of the motion to dismiss" and as Lead Counsel acknowledged, Plaintiffs would have faced a greater level of scrutiny on summary judgment and at trial.  Preliminary Approval Hearing Transcript at p. 31.  The litigation risks on liability and damages amply justify the $62 million recovered for the Class in settlement.

     a.    *The Cases Cited in the Second McDonald Objection Are Inapposite*

The Second McDonald Objection relies heavily on two unreported decisions to demonstrate the purported unreasonableness of the requested fee, both cases are inapposite.

*In re Charles Schwab Corp. Securities Litigation*, 2011 U.S. Dist. LEXIS 44547 (N.D. Cal. 2011) is inapplicable because the court required the lead plaintiff to engage lead counsel through a competitive bidding process. Lead plaintiff there proceeded to negotiate with a number of law firms, and ultimately ertained counsel who were willing

to take on the representation for 11% of the recovery, which was the ultimate fee requested and awarded in that case. *Id*. at \*28-30.

In re Cadence Design Systems, Inc. Securities & Derivative Litigation, 2012 U.S. Dist. LEXIS 56785 (N.D. Cal. 2012) is also inapplicable.  Ths out-of-Circuit case involved a situation where the plaintiffs counsel sought a lodestar multiplier of 3.8.  *Id*. at \*17.  Importantly the court noted that the 3.8 multiplier was "not necessarily outside the norm."  *Id*. at \*16 (citing *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002) ("most common fund cases apply a multiplier of 1.0-4.0).  The court thereafter reduced the fee award to a 2.9 multiplier, which is comparable to the 3.1 multiplier that the requested fee here would yield.  *Id*.  Moreover, the court conducted an individual examination of the factors[2] related to determining the reasonableness of the fee and concluded that a 3.8 multiplier was not warranted in that instance.  *Id*.  The court appeared concerned by the fact that Plaintiffs' counsel only expended a limited amount of time on the case and also, oddly, looked to California state law related to estate planning to determine the appropriate fee.  *Id*. at \*\* 16-17.  Here, counsel expended close to 13,000 hours (*See* ECF No.  304-6, ¶ 5; 304-7, ¶ 6; 304-8) in pursuit of these claims and thereby took on considerably more risk than plaintiffs' counsel in *Cadence*.  Further, Lead Counsel submits that state law related to estate planning administration is not an appropriate barometer for the reasonableness of fees in a complex nationwide securities class action.

---

[2] Mr. McDonald claims that Lead Plaintiffs did not review any documents until after the Motion to Dismiss was denied.  That is false.  Lead Plaintiffs declined to engage in mediation unless Morgan Keegan produced relevant documents, and in fact reviewed all he millions of pages of documents before the mediation session.

Moreover, Lead Counsel here, as explained in detail in the Fee Motion and in the Fitzpatrick Declaration in particular believe they amply carried their burden in demonstrating the reasonableness of the fee.   Merely because one court in California made a separate determination that resulted in a very similar, albeit slightly lower lodestar cross check, does not remove the requested fee from the range of reasonableness regularly awarded in the Sixth Circuit.

       b.     *Professor Fitzpatrick's Opinion Is Sound and Consistent with the Sixth Circuit's Approach in Setting Reasonable Fees*

Importantly, Professor Fitzpatrick's opinion focuses on cases strictly in the Sixth Circuit, whereas the Miller and Eisenberg study relied upon by Mr. McDonald does not appear to be so confined.   *Compare*, Fitzpatrick Decl. ¶¶ 13-14 *with* Second McDonald Objection at 12-14.   Moreover, Professor Fitzpatrick went much further than merely comparing numbers in class action settlements, and Professor Fitzpatrick specifically tailored his opinion to the situation at bar in light of the factors the Sixth Circuit considers relevant in determining a reasonable fee.   Fitzpatrick Decl. ¶¶ 14-17.

Mr. McDonald incorrectly claims that the Eisenberg and Miller study supports a lower fee award than a 30% award, but this study in fact supports the reasonableness of a 30% award.   Attached hereto as Exhibit 1 and 2 are full copy of both the 2004 and 2010 Eisenberg and Miller studies.   Although Mr. McDonald correctly notes that the mean fee award found in settlements between $38.3 million and $69.6 million was 20.5%, as the study makes clear the standard deviation was 10%.  Ex. 1 at 265.   Further, Eisenberg and Miller go so far to conclude that "fee requests falling within one standard deviation above or below the mean should be viewed as generally reasonable and approved by the court

unless reasons are shown to question the fee." Ex. 2 at 74. In other words even the Eisenberg and Miller study supports that a 30% award in this case is reasonable.

Additionally, the Second McDonald Objection mistakenly seeks to require in all instances that a fee award be made at the national average, but the Sixth Circuit law is clear that fee awards should be tailored the individual circumstances of each case, precisely what Professor Fitzpatrick did in his report. . *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); Fitzpatrick Decl. ¶ 10. The only factual evidence before this Court fully taking into consideration the *Rawlings* factors along with a survey of other awards in the Sixth Circuit is Professor Fitzpatrick's uncontroverted declaration which could not be clearer that: "an award equal to 30% of the settlement here is within the range of reasonable fees." Fitzpatrick Decl. ¶ 12.

Moreover, Mr. McDonald's contention that the percentage-of-fund should be reduced because of the size of the common fund created ignores relevant caselaw holding that this sliding-scale approach is not appropriate as a blanket rule. *See e.g.*, *Rite Aid Corp. Sec. Litig*, 396 F.3d 294, 303-03 & n.12 (3rd Cir. 2005) ("[I]t may be appropriate for percentage fees awarded in large recovery cases to be smaller in percentage terms than those with smaller recoveries . . . [b]ut there is no rule that a district court must apply a declining percentage reduction in every settlement involving a sizeable fund"). Instead, a fact-intensive analysis is required to determine the appropriateness of a fee. *Id.*; *see also Rawlings*, 9 F.3d at 516. Here, Mr. McDonald's applies no such fact-intensive analysis and attempts to impose upon the Court the blanket rule that percentage of fund recoveries must be inversely proportional to the size of the recovery. Additionally, contrary to the conclusions in the Second McDonald Objection, Professor

Fitzpatrick does consider the fact that fee percentages decline as settlement sizes increase. Professor Fitzpatrick in his study ultimately concludes that the "fee percentages tended to drift lower at a fairly slow pace until a settlement size of $100 million was reached." Second McDonald Objection, Ex. 2, 7 J. Empirical L. Stud. 811, 838. Accordingly, Mr. Fitzpatrick did take into consideration that fee percentages decline as settlement sizes increase but concluded that this fact alone did not require a lower fee award in this instance than the requested 30% fee award.

        c.      *The Record Is Sufficient to Support the Requested Fee*

Next, Mr. McDonald incorrectly claims that the Court does not have sufficient information before it to make an informed decision on the reasonableness of the fee, but the Mr. McDonald offers only speculation and no evidence to support its position. The Second McDonald Objection includes no declaration from any party claiming that the hours worked by counsel in this case are excessive and only offers the unsworn argument of counsel. This is insufficient to support a conclusion that the hours worked are excessive, especially in light of Lead Counsel providing two declarations from independent practitioners in Tennessee that specifically provided evidence on the reasonableness of the hours expended. ECF. No. 303-12, ¶ 12 (Turner Declaration); 303-13, ¶¶ 5-9 (Ryder Declaration). In other words, the unrebutted evidence before this Court shows that the hours expanded by Lead Counsel are reasonable and consistent with other cases of this nature.

The reality is that Lead Counsel expended considerable time in preparing this case, meeting with experts, reviewing the nearly 7 million pages of documents produced in this litigation and participating in a robust mediation to successfully resolve this case.

Lead Counsel reviewed the nearly 7 million pages of documents to develop sufficient evidence to persuade the mediator that the Plaintiffs' claims had merit and to ensure that the mediator informed Defendants that the claims had merit, all in furtherance of obtaining the largest possible settlement. As a result of this effort, the Plaintiffs reached an exceptional $62 million settlement for the benefit of the Class.

Further, the time expended does not include the time spent on the Fee Motion, nor does it include any of the time spent after February 28, 2013. ECF. No. 304-6 at ¶ 1. As the Court has seen from the filing since that date, significant time has been expended beyond the approximately 13,000 hours expended as of February 28, 2013. Mr. McDonald's contention that merely because this case did not proceed to class briefing or trial does not justify reducing the number of hours worked by Lead Counsel.

> d.    *The Hourly Rates of Labaton Sucharow Are Not Excessive*

Initially, Mr. McDonald again fails to offer any *evidence* that the hourly rates are excessive. Mr. McDonald's counsel's subjective belief is insufficient to rebut the formal evidence before the Court. Finally, Mr. McDonald incorrectly claims that the reasonableness of the hourly rates must be limited by the Memphis geographical area, but this ignores the fact that this litigation is national in scope and national counsel brought considerable expertise to this area. In these instances, courts, including this Court, regularly look to the hourly rates lawyers command in the national market. *See e.g.*, *Owens v. Carrier Corp.*, Case No. 08-cv-02331 (W.D. Tenn.) (Transcript of Hearing of July 15, 2010 at 12-13) (Mays, J.) (approving final class action settlement which included hourly rates for counsel at prevailing national rates)[3]; *see also Louisiana Power & Light*

---

[3] For the Court's convenience a copy of this transcript is attached hereto as Exhibit 3.

*Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995) (holding that courts can consider the normal billing rates of attorneys in setting an appropriate hourly rate for determining the reasonableness of a fee award and courts are not limited only to the prevailing market rates in the community where the action is pending).

> e.     *Lead Counsel Is Not Requesting A Lodestar Multiplier*

As detailed in the Fee Motion, and as conceded in the Second McDonald Objection, the percentage-of-fund approach is the appropriate method for setting reasonable attorneys' fee award in securities litigation.  Despite conceding this point, the Second McDonald Objections' contends a lodestar multiplier is not warranted in this instance, which is nothing more than an a veiled attempt to impose the lodestar method of setting a reasonable attorneys' fees in this case despite case law that the percentage-of-fund method is more appropriate.

Lead Counsel does not seek a multiplier in this instance, but only seek a percentage-of-fund approach.   The lodestar cross-check used to ensure that the percentage-of-fund approach does not provide an excessive fee demonstrates that the requested fee here is within the range of reasonableness.  ECF No. 303 at 14 (collecting cases).  Indeed, Mr. McDonald never confronts the cases cited in the Fee Motion showing that a 3.1 lodestar cross-check is within the range of reasonableness for percentage-of-fund awards.  ECF. No. 303 at 12-14.  Instead, the Second McDonald Objection attempts to misuse the purpose of the lodestar cross check and confuse the Court as to its purpose. The Court should decline this invitation to impose the lodestar/multiplier approach when it is abundantly clear that the percentage-of-fund method is appropriate and Lead

Counsel's proposed 30% of the fund award is within the range of reasonableness for similar cases in the Sixth Circuit.

### 4.     There is No Clear-Sailing Provision

Contrary to Mr. McDonald's contention, there is no clear sailing provision in the Settlement Agreement.   The Settlement Agreement merely states that the Defendant "will take no position" on the requested fee and does not impose upon the requested fee a ceiling as required for a "clear-sailing" provision.  The case relied upon by the Second McDonald Objection makes this clear when it states that a clear sailing provision "is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court ***so long as the award falls beneath a negotiated ceiling***."   Second McDonald Objection at 18 (citing *Weinberger v. Great N. Nekoosa Corp.*, 925 F.3d 518, 520, n.1 (1st Cir. 1991) (emphasis added).)  Here, there is no negotiated ceiling and the cautions imposed on clear-sailing agreements do not apply to the situation at bar because Lead Counsel and Defendants never "bargained away something of value to the class." *Weinberger*, 190 F.3d at  525.

### 5.     Computer Aided Research Expenses Are Recoverable

Finally, Mr. McDonald incorrectly claims that computer aided research is not recoverable as an expense, citing a Seventh Circuit decision.  However, "the Sixth Circuit has never reached this issue."  *Am. Canoe Ass'n v. City of Louisa*, 683 F. Supp. 2d 480, 501 (E.D. Ky. 2008).  There is currently a circuit split on the issue.  *See Trs. of the Constr. Indus. and Laborers Health and Welfare  Trust v. Redland Ins. Co.,* 460 F.3d 1253, 1258 (9th Cir. 2006) (collecting cases).  The only reported decision from a district court in this circuit permitted computer aided research recovery as an expense.  *Am.*

*Canoe.*, 683 F. Supp. 2d at 501. The Court should follow *American Canoe's* lead and allow the recovery here.

Dated: April 11, 2013

Respectfully submitted,

BRANSTETTER STRANCH &
JENNINGS, PLLC

By: /s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV (BPR
#023045)
*gstranch@branstetterlaw.com*
BRANSTETTER, STRANCH &
JENNINGS, PLLC
227 Second Avenue North
Nashville, Tennessee 37201
Telephone: (615) 254-8801
Facsimile: (615) 250-3937

*Liaison Counsel for Lead Plaintiffs*

Joel H. Bernstein
*jbernstein@labaton.com*
David J. Goldsmith
*dgoldsmith@labaton.com*
Nicole M. Zeiss
*nzeiss@labaton.com*
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Lead Counsel for Lead Plaintiffs*
*Lion Fund, L.P., Dr. J. Samir*
*Sulieman and Larry Lattimore*

George S. Trevor
*gtrevor@pswlaw.com*
PEARSON, SIMON &
WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
*Additional Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2013, I electronically filed the foregoing

documents with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following participating CM/ECF participants:

**Adam Julien Gana** agana@nbrlawfirm.com
**Albert C. Harvey** harveya@thomasonlaw.com
**Andrew Berke** andy@berkeattys.com
**Asa R. Danes** asadanes@paulhastings.com
**B. J. Wade** bwade@gewwlaw.com
**Beth A. Keller** bkeller@faruqilaw.com
**Charles H. Jones, Jr.** fwatson@watsonburns.com
**Christopher Marlborough** cmarlborough@faruqilaw.com
**D. Andrew Pietro** pietroda@sullcrom.com
**Dale H. Tuttle** dtuttle@gewwlaw.com
**David B. Tulchin** tulchind@sullcrom.com
**David E. Swarts** swartsd@sullcrom.com
**Emily C. Komlossy** ekomlossy@faruqilaw.com
**Emily Nicklin** enicklin@kirkland.com
**Ernest Koella** nf@fallsveach.com
**Eugene J. Podesta, Jr.** gpodesta@bakerdonelson.com
**Frank L. Watson, III** fwatson@watsonburns.com
**Harold Naill Falls, Jr.** nf@fallsveach.com
**Ira Horowitz** fwatson@watsonburns.com
**J. Timothy Francis** francis@bham.rr.com
**Jeffrey B. Maletta** jeffrey.maletta@klgates.com
**Jeffrey R. Sonn** jsonn@sonnerez.com
**Jerome A. Broadhurst** jbroadhurst@appersoncrump.com
**John A. Cremer** cmb@indylaw.com
**Derek W. Loeser** dloeser@kellerrohrback.com
**Edge Partners, Ltd.** fwatson@watsonburns.com
**Ellen M. Doyle** edoyle@stemberfeinstein.com

**Kevin C. Logue** kevinlogue@paulhastings.com
**Kristopher S. Ritter** ritterk@kirkland.com
**Leo Maurice Bearman , Jr** lbearman@bakerdonelson.com
**Marc Jay Bern** mjbern@nbrlawfirm.com
**Mark P. Chalos** mchalos@lchb.com
**Martin W. Zummach** martin@sparkman-zummach.com
**Matthew M. Curley** mcurley@bassberry.com
**Michael A. Brady** mbrady@bassberry.com
**Michael L. Dagley** mdagley@bassberry.com
**Nicole A. Baker** nicole.baker@klgates.com
**Peter H. Burke** pburke@bhflegal.com
**John B. Veach, III** tv@fallsveach.com
**John J. Carey** jcarey@careydanis.com
**Kenneth C. Johnston** kjohnston@krel.com
**Peter S. Fruin** pfruin@maynardcooper.com
**Randall K. Pulliam** rpulliam@cauleybowman.com
**Richard A. Lockridge** ralockridge@locklaw.com
**Scott L. Adkins** sadkins@sonnerez.com
**Scott T. Beall** sbeall@bealllaw.com
**Seymour Warren** fwatson@watsonburns.com
**Shepherd D. Tate** state@bassberry.com
**Steven Lawrence Polk** larry.polk@sutherland.com
**Timothy A. Duffy** tduffy@kirkland.com
**W. Brantley Phillips, Jr.** bphillips@bassberry.com

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV