## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE & ERISA LITIGATION,** | **CASE NO. 2:09-md-02009** |
| **J. Scott Bolton, et al,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 2:10-cv-02439-SHM** |
| **Morgan Asset Management., Inc., et al,** | |
| **Defendants.** | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Defendants Regions Investment Management, Inc. (formerly known as Morgan Asset Management, Inc.), James C. Kelsoe, Jr., David H. Tannehill, Allen B. Morgan, Jr., Joseph C. Weller, J. Kenneth Alderman, J. Thompson Weller, Charles D. Maxwell, R. Patrick Kruczek, Michele F. Wood, Brian B. Sullivan, Jack R. Blair, Albert C. Johnson, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, Archie W. Willis, III, William Jeffries Mann, James D. Witherington, and Carter E. Anthony ("Defendants") respectfully submit the following joint memorandum of law in opposition to the Motion to Remand (Doc. No. 6) filed by Plaintiffs.

## BACKGROUND

This action is one of many that have been filed against various groups of the Defendants[1] regarding losses sustained by certain investment funds: the RMK Select High Income Fund, the

---

[1] Some of the individual Defendants that are parties to this lawsuit are not parties to all of the similar actions. For ease of reference in this Memorandum, however, the term "Defendants" will be used to describe Regions Investment Management, Inc. and whichever individual Defendants are parties to each of the cases.

02952000.5

RMK Select Intermediate Bond Fund, the RMK Strategic Income Fund, the RMK Advantage Income Fund, the RMK High Income Fund, and the RMK Multi-Sector High Income Fund (the "Funds").[2]  Plaintiffs in this case, as in other cases, allege that Defendants mismanaged the Funds, made material misrepresentations and omissions about the Funds, failed to value the Funds' assets properly, and failed to follow the Funds' guidelines regarding the concentration of the Funds' assets.  Plaintiffs further specifically allege that Defendants "fail[ed] to make timely and accurate disclosures to the investing public" (Compl. ¶ 61); filed "annual and semi-annual reports … during 2006-2007 [that] contained inflated valuations of the Funds' securities and mischaracterized certain holdings in structured securities as other types of assets" (*Id*. at ¶ 78); "violat[ed] SEC rules" (*Id*. at ¶ 66); made SEC filings that did not give requisite notice or information to investors (*Id*. at ¶¶ 66, 68); and made material misrepresentations and/or omissions in connection with the Funds' prospectuses and registration statements in violation of the Federal Securities Act of 1933 (*Id*. at ¶¶ 62-78).

Based on these allegations, Defendants timely removed this action to the District Court for the Eastern District of Tennessee pursuant to 28 U.S.C. §§ 1441 and 1446 and moved for a stay pending transfer by the Judicial Panel on Multidistrict Litigation (the "JPML").  The District Court for the Eastern District of Tennessee granted the Motion for a Stay on January 7, 2010, ordering that the matter was stayed pending a decision of the JPML regarding whether to transfer this matter.  Not content to proceed in federal court, Plaintiffs filed their Motion to Remand this action to the state court.  On June 7, 2010, the JPML issued a Transfer Order permanently

---

[2] Most of the litigation – which includes more than 20 derivative, ERISA, federal securities class actions and individual investor actions – is the subject of multidistrict litigation pending before this Court (the "MDL Proceeding").

transferring this case to the MDL proceeding.  (MDL Transfer Order, ECF No. 14).  On June 23, 2014, this Court entered an Order lifting the stay and providing Defendants 10 days to respond to Plaintiffs' Motion to Remand (Doc. No. 46).

This Court has previously considered motions to remand filed by plaintiffs in other similar litigation involving the Defendants in this case.  This Court denied the motion to remand in *Landers v. Morgan Asset Mgmt., Inc.*, 2009 WL 962689 (W.D. Tenn. Mar. 31, 2009), but granted the motions to remand in *Kramer v. Regions Bank*, 2010 WL 797792 (W.D. Tenn. Mar. 2, 2010), *In re Regions Morgan Keegan Sec., Derivative, and ERISA Litig. (Brilliard)*, 2010 WL 2598242 (W.D. Tenn. June 24, 2010), *In re Regions Morgan Keegan Sec., Derivative, and ERISA Litig. (Consulting Services Group, LLC)*, 2010 WL 2650736 (W.D. Tenn. July 2, 2010), and *In re Regions Morgan Keegan Sec., Derivative, and ERISA Litig. (Purdue Avenue)*, 2013 WL 2404063 (W.D. Tenn. May 31, 2013).  All of these latter cases are distinguishable, as further discussed herein.

For the reasons set forth more fully below, Defendants urge this Court to deny Plaintiffs' Motion to Remand.  Plaintiffs' allegations, although they purport to be pled as exclusively state law claims, raise substantial questions of federal law that cannot be proven without reliance on the Investment Company Act of 1940 ("ICA"), SEC rules and other federal statutes.  Federal law does not simply provide affirmative defenses to the Defendants in this case, as this Court found to be the case in *Brilliard*; instead, Plaintiffs have asserted claims that are premised, at least in part, on alleged explicit and/or implicit violations of federal statutes, rules or regulations.  Simply stated, despite Plaintiffs' attempt to disclaim any reliance on federal law, their allegations have invoked this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1367, and Defendants are

entitled to have this matter heard in federal court.  This case, therefore, was properly removed to federal court, and Plaintiffs' Motion to Remand must be denied.

**ARGUMENT AND AUTHORITY**

**I.     Standard for Federal Jurisdiction**

"The Supreme Court has identified three situations in which a case could 'arise under' federal law: (1) the plaintiff's cause of action is created by federal law; (2) 'some substantial, disputed question of federal law is a necessary element ... of the well-pleaded state claim'; or (3) the 'claim is "really" one of federal law.' *City of Warren v. City of Detroit*, 495 F.3d 282, 286 (6th Cir. 2007) (internal citations omitted).

Where federal law does not expressly create a plaintiff's cause of action, a court looks to the face of a plaintiff's well-pleaded complaint to determine whether jurisdiction is appropriate. *Franchise Tax Bd. v. Const. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983).  It is well settled that an action falls within the jurisdiction of the federal courts when a "plaintiff's well-pleaded complaint raises an issue of federal law."  *Robinson v. Michigan Consol. Gas Co., Inc.*, 918 F.2d 579, 584 (6th Cir. 1990).  Thus, while plaintiffs are generally free to choose the forum in which they will proceed, they can avoid federal jurisdiction only by "exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  That reliance, however, must be genuine and absolute, and the "'plaintiff cannot disguise inherently federal causes of action.'" *Caravanas v. Hall*, 1999 WL 605491 at *1 (E.D. La. Aug. 10, 1999) (quoting Wright Miller & Cooper, FED. PRAC. & PROC. § 3722, p. 436 (3d ed. 1998)).

As the United States Supreme Court has stated, when "vindication of a right under state law necessarily turn[s] on some construction of federal law," the claim arises under federal law

for purposes of federal question jurisdiction. *Franchise Tax Bd.*, 463 U.S. at 9. *See also Her Majesty the Queen v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989) (federal courts have jurisdiction over causes of action "when plaintiffs 'artificially plead' their complaint in order to avoid federal jurisdiction of claims that are federal in nature"). "[A] case may *not* be removed to federal court on the basis of a federal defense." *Caterpillar,* 482 U.S. at 393. However, as the Sixth Circuit has explained, a substantial federal question exists wherever there is a disputed federal issue, and the exercise of jurisdiction will not disrupt any congressionally approved balance of federal and state judicial responsibilities. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007) (en banc).

As set forth more fully below, in this case, substantial, disputed questions of federal law must necessarily be resolved in connection with evaluating Plaintiffs' claims, as alleged; they are not merely defenses but instead are intrinsic components of Plaintiffs' allegations. Indeed, the Plaintiffs have specifically referenced SEC rules and filings in the Complaint – both in connection with their Section 11 and Section 12 claims, as well as with regard to their claims of misrepresentations in the Funds' annual and semi-annual reports. Given Plaintiffs' allegations, the Court will have to evaluate Defendants' conduct against the mandates and directives of numerous federal statutes, federal rules and federal regulations. After all, absent proof that Defendants did not comply with federal law with respect to their management of the Funds and their disclosures, there can be no liability for Plaintiffs' claims.[3] As such, there can be no real doubt that Plaintiffs' Complaint has invoked the jurisdiction of this Court.

---

[3] The suggestion, therefore, that "plaintiffs can prevail on all their legal claims even if the jury finds no violation of any federal regulation," simply is not correct. (Doc. No. 6-1 at pp. 3-4).

II.     **Substantial And Disputed Questions of Federal Law Must Be Resolved In Connection With Evaluating Plaintiffs' State-Law Claims, And This Court Therefore Has Jurisdiction.**

A.     **Plaintiffs' Specific Reference To SEC Rules and Filings Makes Clear That This Case "Arises Under" Federal Law.**

In moving to remand, Plaintiffs assert that their "claims make no reference to federal law." (Doc. No. 6-1 at 3). The plain language of the Complaint, however, contradicts this statement. As pled, Plaintiffs' claims against Defendants expressly incorporate federal law as a necessary factor in evaluating the merits of their purported state law claims, which generally revolve around the allegation that Defendants failed to disclose material information regarding the structure, valuation, and liquidity of the Funds to Plaintiffs and, thus, have engaged in fraudulent behavior. (*See, e.g.*, Compl. ¶¶ 147-48).

Specifically, as the basis for their claims, Plaintiffs allege that the Funds had an "extreme overconcentration in the riskiest tranches of structured, asset-backed securities – an investment strategy and risk not properly disclosed to potential investors." (Compl. ¶ 57). Plaintiffs further allege that "the Funds' prospectuses and registration statements … failed to disclose a number of other material facts" including "[t]he substantial illiquidity of the Funds;" that the Funds violated certain investment restrictions in 2006-07; and that the Funds paid "dividends to investors that included an undisclosed return of principal" in 2007-08. (*Id*. ¶¶ 72, 76-77). Plaintiffs further specifically allege that "the annual and semi-annual reports filed by the Funds during 2006-2007 contained inflated valuations of the Funds' securities and mischaracterized certain holdings in structured securities as other types of assets." (*Id*., ¶ 78). According to Plaintiffs, these actions were "**[i]n violation of SEC rules**." (*Id*. ¶ 66 (emphasis supplied).) Given that violating an SEC

rule can create a private right of action under federal law, it is evident that Plaintiffs' claims arise under and are dependent upon federal law.  *See Loschiavo v. City of Detroit*, 33 F.3d 548, 551 (6th Cir. 1994) (explaining that "federal regulations have the force of law").

### B.     Resolution of Numerous Federal Issues Is Necessary To Resolve Plaintiffs' State Law Claims.

In addition to their specific reference to SEC rules, Plaintiffs' Complaint also repeatedly relies on allegations that necessarily depend on proof of an alleged violation of federal law. In fact, Plaintiffs devote approximately 20 full paragraphs of the Complaint to detailing the Funds' alleged liquidity, concentration and valuation problems.  The Complaint even contains a section entitled "Misrepresentations And Omissions In the Funds' SEC Filings."  (*Id.* ¶¶ 62-78). Significantly, Plaintiffs' allegations as to fraudulent SEC filings are not limited to alleged misrepresentations in the Funds' prospectuses and registration statements; instead, as set forth in paragraph 78 of the Complaint, Plaintiffs have specifically alleged that "the annual and semi-annual reports filed by the Funds during 2006-2007 contained inflated valuations of the Funds' securities and mischaracterized certain holdings in structured securities as other types of assets." (Compl. ¶78).[4]

The Funds at issue in this case were issued by federally registered investment companies regulated by the ICA.  *See* 15 U.S.C. §§ 80a-1 *et seq.*  As numerous courts have consistently made clear, the ICA is a pervasive federal regulatory scheme "intended to deter mismanagement of investment companies for the protection of investment company security holders." *Herpich v. Wallace*, 430 F.2d 792, 816 (5th Cir. 1970); *see also United States v. NASD*, 422 U.S. 694, 735

---

[4] Allegations of fraud in annual and semi-annual reports cannot form the basis of a Section 11 or a Section 12 claim. As such, Plaintiffs' allegations of fraud in the annual and semi-annual reports constitute a separate federal securities fraud claim subject to federal question jurisdiction.

(1975) (describing the ICA as a "pervasive regulatory scheme"); *Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1976) (noting that the ICA was among a series of statutes "designed to eliminate certain abuses in the securities industry" and "was based upon exhaustive studies by the SEC").

In large part, Defendants' conduct must be examined against the requirements of the ICA and rules promulgated under the ICA. For example, the Complaint directly challenges the Funds' concentration in certain types of investments and compliance with its concentration policy. Specifically, Plaintiffs allege that Defendants violated the statements in the Funds' own registration statements and prospectuses by failing to invest no more than 25% of the Funds' total assets in a single industry and by misrepresenting that the Funds would not do so. (*See* Compl. ¶ 75 (alleging Funds were mismanaged because Defendants violated restrictions that prohibited investing more than 25% of Funds' total assets in the same industry).) In other words, Plaintiffs assert that they were harmed by Defendants' alleged failure to keep the Funds from being too heavily concentrated in "a narrow sector of securities" and by misrepresenting that they would not invest more than 25% of the total assets in that "narrow sector." Concentration standards applicable to mutual funds are exclusively a function of federal law – specifically, § 13 of the ICA. *See* 15 U.S.C. § 80a-8(b)(1)(E). In fact, in the context of federally registered investment funds, "concentration" is a term-of-art defined by the SEC through federal regulations. *See* Form N-1A, Item 4(b)(1), Instruction 4; Guidelines for the Preparation of Form N-8B-1, Item 4(d), ICA Rel. No. 7,221, 37 Fed. Reg. 12,790 (defining "concentration" and noting the corresponding disclosure obligations for a concentration policy).

Plaintiffs also complain that Defendants are liable because they failed "to value [the Funds'] assets at reasonable fair value" and that the "annual and semi-annual reports … contained inflated valuations … and mischaracterized certain holdings in structured securities as other types of assets." (*See* Compl. ¶¶ 57, 78).   Again, according to Plaintiffs, this alleged misconduct was "[i]n violation of SEC rules."  (*Id.* ¶ 66).  There can be no real dispute, however, that the pricing requirements Plaintiffs refer to are exclusively a function of federal law and regulations.  *See* SEC Rule 270.2a-4 (method of calculating net asset value) and SEC Rule 270.22c-1 (pricing requirements of redeemable securities); SEC Rule 210.6-03 (method of valuation of assets for purposes of financial statements); *see also* Section 2(a)(41) of the ICA, 15 U.S.C. § 80a-2(41) (authorizing SEC to establish regulations for pricing of shares and valuation of fund assets for investment companies).

Plaintiffs also allege that "during significant portions of 2007 and 2008, the Funds were [improperly] paying dividends to investors that included an undisclosed return of principal." (Compl. ¶ 77).  Payment of dividends by an investment fund company also is a subject governed exclusively by federal law – specifically, § 19 of the ICA and SEC rules.  *See* 15 U.S.C. § 80a-19(a) ("It shall be unlawful for any registered investment company to pay any dividend … unless such payment is accompanied by a written statement which adequately discloses the source or sources of such payment."); *see also* SEC Rule 19-1, codified at 17 C.F.R. § 270 (outlining requirements for dividend payment disclosures).  Similarly, the requirements for annual and semi-annual reports are governed by federal regulations.  *See* 17 C.F.R. § 270.30b-1-1 (semi-annual reports) and § 274.101 (Form N-SAR) (form used by registered management investment companies for semi-annual or annual reports to be filed pursuant to Rule 30b1-1).  Regardless of

how Plaintiffs attempt to characterize this issue, an allegation that the Funds made improper

dividend payments, improper payment disclosures, and filed annual and semi-annual reports that

mischaracterized certain holdings will necessarily be judged against a specific – and federal law-

based – standard as applied to the Funds.[5]

### C. Caselaw Supports Defendants' Position That The Complaint "Arises Under" Federal Law, Despite The Fact That Plaintiff Has Asserted Only State Law Causes of Action.

Plaintiffs' attempt to avoid federal jurisdiction by disclaiming any reliance on federal law

is not novel.  Nor is their claim that they "can prevail on all their legal claims even if the jury

finds no violation of any federal regulation."  (Docket No. 6-1 at pp. 3-4).  In circumstances like

those presented here, however, federal courts consistently hold that federal jurisdiction is proper.

In March 2009, this Court denied the plaintiffs' motion to remand in a case based on

these same investment funds and involving many of these same Defendants.  *Landers*, 2009 WL

962689 at *11 (W.D. Tenn. Mar. 31, 2009).   Specifically, *Landers* involved claims that

"mortgage-backed securities were illiquid securities for purposes of SEC guidelines limiting the

proportion of illiquid securities in which open-ended funds may invest."  *Id.* at *9.  The plaintiffs

in *Landers* alleged that the "officers and directors' failure to manage the investment funds in

compliance with the funds' stated investment objectives violated" § 13 of the ICA, which

Plaintiffs have implicitly alleged in this case.  *Id.* at *2.  The plaintiffs also acknowledged that

the facts necessary to support a violation of § 13 of the ICA coincided with the facts supporting

---

[5] Plaintiffs do not point to any Tennessee law that would prohibit the Funds' alleged use of "an undisclosed return of principal" to pay dividends.  (Compl. ¶ 77).  Nor could they, as prohibitions on such practices are entirely a function of federal law.  *See* ICA Rel. No. 71, 11 Fed. Reg. 10,991 (explaining that an "important feature" of SEC Rule 19 is the requirement of "explicit and affirmative disclosure whenever a dividend is being paid from a capital source").  Absent a showing that federal law has been violated (*e.g.*, the Funds improperly paid and disclosed dividends), Plaintiffs' claims will fail.

02952000.5

their state law claims.  *Id.* at *9.  Just as in *Landers*, the Plaintiffs here simply cannot establish that the alleged "overconcentration" in the Funds and the alleged misrepresentation that the Funds would not invest more than 25% of total assets in "a narrow sector of securities" was improper and fraudulent without reference to these federal rules and regulations.  The *Landers* Court determined that plaintiffs' complaint raised "disputed federal issues so substantial as to give rise to federal jurisdiction."  *Id.* at *11.  If successful, such claims could have "extensive implications for the business practices of investment management companies that invested in mortgage-backed securities."  *Id.* at *9.  Considering the broad sweep of this potential impact and the numerous federal court actions addressing the same concerns, the *Landers* court also held that remanding the case presented a "substantial risk of inconsistent adjudications."  *Id.*  The *Landers* analysis applies with equal force to Plaintiffs' claims in this action.

The Second Circuit's decision in *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93 (2d Cir. 2001), is also persuasive on this point.  *See Landers*, 2009 WL 962689 at *7 n.9 (describing *D'Alessio* decision as "persuasive").  In *D'Alessio*, the complaint's four causes of action were brought under New York common law.  *D'Alessio*, 258 F.3d at 100.  Nonetheless, the court concluded that the true thrust of the complaint was that the defendant "failed to perform its statutory duty, *created under federal law* …" *Id.* at 101.  The Second Circuit held that a substantial federal question was presented because "resolution of [plaintiff's] claims requires a court to construe federal securities laws and evaluate the scope of the [defendant's] duties."  *Id.* at 101-02.  Thus, the case was one where the vindication of a right under state law necessarily turned on some construction of federal law.  *Id.* at 99.  As discussed above, like *D'Alessio*, the current action presents a substantial federal question because, as established by Plaintiffs' own

allegations, Defendants' alleged legal duties to the Plaintiffs are defined by, among other things, "violation[s] of SEC rules." (Compl. ¶ 66).

The decision in *Gobble v. Hellman*, 2002 WL 34430286 (N.D. Ohio Mar. 26, 2002), provides similar guidance. The plaintiff in *Gobble* framed all nine counts of his complaint as state law claims for breach of fiduciary duty, waste of corporate assets and abuse of control. *Id.* at *1. Relying on much of the authority cited above, the district court found that federal jurisdiction was proper because, in asserting at least two of his claims, the plaintiff had alleged that the defendants had failed to abide by applicable SEC rules and regulations. *Id.* at *2-3. According to the district court, deciding whether violations of those rules and regulations had occurred was "a question of federal law." *Id.* at *3. On this basis, the district court declined to remand the case to state court because "several counts of [p]laintiff's breach of fiduciary duty claims depend upon whether [d]efendants violated their duties under the Federal Exchange Act and SEC rules and regulations … the resolution of [the] claims requires construction and adjudication of substantial questions of federal law, and [therefore federal] jurisdiction … is proper." *Id.*

The decision in *Bender v. Jordan*, 525 F. Supp. 2d 198 (D.D.C. 2007), offers additional guidance. In *Bender*, a bank asserted cross-claims against several officers and directors for breach of contract and unjust enrichment to recover legal expenses that had been advanced to them in other litigation. *Id.* at 200-01. The officers and directors moved to dismiss the cross-claims, arguing that the district court did not have jurisdiction over such common law claims. *Id.* at 203-04. Noting that the legal expenses had been advanced pursuant to contracts that were

mandated by a federal regulation, the district court disagreed.  *Id*. at 204-05.  According to the district court:

> The terms under which the Bank advanced fees and expenses to the Defendants were set by the Regulation and the terms under which the Defendants may be required to repay the Bank are set by the Regulation.  There is no way to resolve whether the Defendants must repay the Bank without reference to the Regulation.  Thus, the claims of the Bank – ***no matter how styled in the cross claim*** – must be determined by reference to federal law.  ***The Court clearly has jurisdiction over them.***

525 F. Supp. 2d at 205 (emphasis added).

Similarly, in *Capece v. Depository Trust & Clearing Corp.*, 2005 WL 4050118 (S.D. Fla. Oct. 11, 2005), the plaintiffs alleged a single claim of negligence against defendants on the basis that the defendants failed to monitor a federally-approved securities trade settlement program. *Id*. at *2.  The plaintiffs' complaint did not contain any references to federal law (*see* Complaint, attached as Exhibit A), and plaintiffs argued that their complaint was "an attack on [d]efendants' alleged failure to comply with [the settlement program's] rules."  *Id*. at *8.  The *Capece* Court rejected plaintiffs' arguments that the case should be remanded and held that whether "the federal provisions in question are statutes or regulations" and whether "the entity subject to federal authority is public or private is of no moment so long as the inquiry requires examination of the federal regulatory scheme."  *Id*. at *8.

As these and other federal decisions make clear, where federal law gives rise to and governs the parties' relationship, and where the court must look to federal law to determine whether there has been a violation of any duties inherent in that relationship, there can be no legitimate dispute that federal question jurisdiction is present.  *See Landers*, 2009 WL 962689 at

*7 (finding federal jurisdiction, in part, because the "[t]he relationships that underpin the counts as Plaintiffs have pleaded them are created by federal law"); *see also Sparta Surgical Corp. v. NASD, Inc.*, 159 F.3d 1209, 1212 (9th Cir. 1998) (affirming removal because state law claims related to delisting of securities offering were "necessarily based on an assumed violation of the [SEC] rules governing such procedures"); *Wietschner v. Gilmartin*, 2003 U.S. Dist. LEXIS 18997, at *7-9 (D.N.J. Jan. 13, 2003) (retaining jurisdiction over plaintiff's state law breach of fiduciary duty claims because they were based on alleged violations of federal securities law).

Simply put, the ICA governs the nature, types and content of the disclosures that investment funds, like the ones at issue in this case, are required to make.  *See* 15 U.S.C. § 80a-8b(1)-(5).  Where, as here, Plaintiffs have effectively put that regulatory system, the disclosures issued by the Funds pursuant to it, and SEC rules and filings at issue, the exercise of federal jurisdiction is warranted.[6]

## III.   Discussion of *Brilliard* and Other Cases Cited By Plaintiffs.

In their Motion Requesting a Status Conference (Doc. 50 in Case No. 2:10-cv-02278), Plaintiffs note that this Court granted the plaintiffs' motion to remand in *Brilliard*, which Plaintiffs contend is support for their argument that there is no basis for federal jurisdiction in this case.  Contrary to Plaintiffs' contention, the Court must analyze the allegations and

---

[6] In an effort to discredit the exercise of federal jurisdiction in this action, Plaintiffs cite the decision in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006), which, they say, "caution[s] against liberal finding of federal question jurisdiction over claims created by state law."  (Doc. No. 6-1 at 16).  Plaintiffs' reliance on *Empire* is misplaced, as that decision is distinguishable from this action.   In *Empire*, an insurer sought reimbursement from a federal employee in federal court for benefits paid after the employee obtained damages for certain personal injuries in state court.  The Supreme Court held there was no jurisdiction because none of the rights in question were created by federal law.   *Id*. at 686-87.  As explained in this Memorandum, however, all of the principal rights and disclosure obligations at issue in this action were either created or required by federal law.  *See, e.g.*, 15 U.S.C. § 80a-8b(1)(1)(E); Form N-1A, Item 4(b)(1), Instruction 4; Guidelines for the Preparation of Form N-8B-1, Item 4(d), Investment Company Act Rel. No. 7,221, 37 Fed. Reg. 12,790 (defining "concentration" and noting the corresponding disclosure obligations for investment fund concentration policies).

02952000.5                                                                                                          14

arguments advanced in this case and make an independent determination with respect to this case.

This Court raised two primary rationales in *Brilliard* in support of its determination to grant the motion to remand.  First, this Court stated that if it were "to accept Defendants' assertion that the potential need to apply federal law to analyze Plaintiffs' state-law claims triggers federal jurisdiction, it would be nearly impossible to assert a state-law fraud claim against a securities dealer and remain in state court."  *See Brilliard*, 2010 WL 2598242, at *5.  Defendants respectfully disagree.  For example, a plaintiff could allege that a broker-dealer fraudulently failed to sell a security in accordance with a customer's instructions, or fraudulently purchased a security without the authority of the customer.  In those instances, and others, although the claims would involve securities, they would not be so intimately intertwined with federal securities laws to trigger federal jurisdiction.  Here, however, Plaintiffs allege that Defendants violated SEC rules with respect to the management of the Funds.  To evaluate these claims, the Court necessarily must deeply analyze the ICA and the other relevant SEC rules to determine their requirements and whether they were violated.

This Court further concluded that all of the defendants' arguments in support of removal were defenses, and that the plaintiffs could demonstrate the elements of the claims alleged without reference to federal law.[7]  *Id.* at *4-5. As demonstrated in this Memorandum, however, Plaintiffs cannot recover on their alleged claims without reference to, and reliance on, federal

---

[7] The *Consulting Services Group* case is distinguishable from the present case because plaintiffs in *Consulting Services* did not reference any violations of federal laws, rules, or regulations in their complaint.  Despite this difference, the Court's decision in *In re Regions Morgan Keegan Sec., Derivative, and ERISA Litig. (Consulting Services Group, LLC)*, 2010 WL 2650736 (W.D. Tenn. July 2, 2010) substantially mirrors its decision in *Brilliard*. Defendants respectfully disagree with the Court's decision in *Consulting Services* for the same reasons it contests the *Brilliard* decision.

law.  Specifically, Plaintiffs cannot prove that Defendants violated any investment restrictions without showing what those restrictions are and then showing that Defendants did not adhere to them.  Likewise, Plaintiffs will be unable to prove their allegations regarding the valuation of the Funds in the annual and semi-annual reports without demonstrating what the SEC requires in that respect.  Plaintiffs bear the burden of proving their claims, and they cannot do so without invoking SEC rules and regulations.  Accordingly, federal jurisdiction is not based simply on Defendants' defenses, but is rather mandated by Plaintiffs' affirmative allegations.

The facts of the *Kramer* and *Purdue Avenue* cases are also different from the present case.  Neither of those cases alleged that the annual and semi-annual reports filed by the Funds, which are governed by SEC rules, were fraudulent.  Moreover, in *Kramer*, the Court noted that "Plaintiff does not reference federal law or policy" in support of its order granting remand. *Kramer*, 2010 WL 797792, *4 (W.D. Tenn. Mar. 2, 2010).  The Court also distinguished *Purdue Avenue* from *Landers* on the basis that the *Purdue Avenue* plaintiffs "d[id] not reference the ICA or any other federal statute, rule, or regulation."  *Purdue Avenue*, 2013 WL 2404063, *4 (W.D. Tenn. May 31, 2013).  Here, Plaintiffs' Complaint directly alleges that Defendants violated "SEC rules" and implicitly alleges that Defendants violated other SEC and ICA rules and regulations with regard to not only registration statement and prospectus filings, but also with regard to the annual and semi-annual reports.  Defendants respectfully submit that the present case is very similar to *Landers*, in which this Court held that Congress has found a violation of the federal statutes mentioned in that case (*e.g.*, the ICA) "sufficiently significant to warrant a federal private right of action to vindicate them."  *Landers*, 2009 WL 962689 at *8 (W.D. Tenn. Mar. 31, 2009).

The Court should similarly disregard the other case law Plaintiffs cite (with limited discussion) in support of their remand motion, none of which are from a Tennessee federal district court or the Sixth Circuit Court of Appeals.  (Docket No. 6-1 at pp. 16-18).  This Court should not afford those decisions any weight with respect to the remand motion at issue here, which must be decided on the facts and circumstances in this action alone.  *See, e.g., Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 668 n.2 (5th Cir. 2007) ("To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal.").

Moreover, the decisions highlighted by Plaintiffs are distinguishable from the facts in this case.  For example, in *Firefighters' Ret. Sys. v. Regions Bank*, 598 F. Supp. 2d 785, 789 (M.D. La. 2008), the court granted the motion to remand because it found that plaintiff could seek recovery under its various other non-securities state law claims and because the plaintiff "ha[d] not alleged any violations of federal securities law or SEC rules on the face of its petition."  *Id.* at 798.  As demonstrated in this case, Plaintiffs clearly allege that Defendants violated SEC rules and regulations on the face of the Complaint.  Likewise, the other decisions cited by Plaintiffs – *Pearson v. Regions Bank*, 2009 WL 1328083 (M.D. Ala. May 13, 2009), *Archer v. Morgan Keegan & Co., Inc.*, 2009 WL 3805714 (M.D. Ala. Nov. 12, 2009), and *Rice v. Regions Bank*, Case No. 2:09-cv-624 (N.D. Ala. 2009) – only involved state-law claims and did not allege any violations of SEC rules and regulations.

Based on the allegations in the Complaint, which allege violations of SEC rules in connection with not only the filing of registration statements and prospectuses, but also with

regard to the Funds' annual and semi-annual reports, "arising under" jurisdiction exists, and the Court should deny the Motion to Remand.

**IV.    Federal Jurisdiction Will Not Disturb The Balance of Federal And State Judicial Responsibilities.**

As noted, the United States District Court for the Western District of Tennessee will be called upon to address ***identical facts and legal issues*** in resolving pretrial matters in the MDL Proceeding now pending in Memphis.  Virtually all plaintiffs in the MDL Proceeding have made virtually identical claims premised on alleged concentration and valuation violations.  *See In re Regions Morgan Keegan Sec., Derivative and ERISA Litig.*, 598 F. Supp. 2d 1379, 1381 (J.P.M.L. 2009) ("All twenty actions share allegations regarding, *inter alia*, whether defendants mismanaged, misrepresented, and omitted material facts regarding the nature, value, risk profile and investment practices concerning one or more of the funds.").

Given these circumstances, retention of this case in federal court will not disrupt the "sound division of labor between state and federal courts."  *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 553 (6th Cir. 2005).  To the contrary, keeping the case in federal court is the only practical way to ensure uniformity of decision relating to the investment funds at issue in this case and numerous other cases already pending in Tennessee and elsewhere.  *See Landers*, 2009 WL 962689 at *9 (finding that, "[b]ecause federal securities actions that raise the same theory are currently pending in federal court," exercise of federal jurisdiction "would not disturb the Congressionally-approved balance of judicial responsibilities"); *see also In re Regions Morgan Keegan*, 598 F. Supp. 2d at 1381 (highlighting need to "prevent inconsistent pretrial rulings").  In making its determination, the *Landers* Court held that remanding the case presented a

02952000.5                                                                                           18

"substantial risk of inconsistent adjudications." *Id*. This analysis should equally apply to Plaintiffs' claims in this action. Any other result would run afoul of the fundamental and well-settled intent of the federal securities laws. *See Mayo v. Dean Witter Reynolds, Inc.*, 258 F. Supp. 2d 1097, 1110-11 (N.D. Cal. 2003) ("The comprehensive system of federal regulation of the securities industry is designed to provide uniform, national rules for participants in the securities markets."); *see also Capece*, 2005 WL 4050118 at *6 (S.D. Fla. Oct. 11, 2005) ("Since 1934, Congress has called for uniform regulation of the national securities markets.").

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court deny Plaintiffs' Motion to Remand.

DATED this 10th day of July, 2014.

Respectfully submitted,

/s/ *Peter S. Fruin*
Peter S. Fruin
MAYNARD COOPER & GALE PC
Suite 2400 Regions Harbert Plaza
1901 Sixth Avenue, North
Birmingham, Alabama 35203
Telephone: (205) 254-1000
pfruin@maynardcooper.com

Britt Latham
Michael A. Brady
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200
blatham@bassberry.com
mbrady@bassberry.com

*Attorneys for Regions Investment Management, Inc., Allen B. Morgan, Jr., J. Kenneth Alderman, Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, Michele F. Wood, James C. Kelsoe, Jr., David H. Tannehill, and R. Patrick Kruczek*

/s/ *L.Webb Campbell II w/p PSF*
L. Webb Campbell II
John L. Farringer IV
SHERRARD & ROE
424 Church Street, Suite 2000
Nashville, TN 37219
wcampbell@sherrardroe.com
jfarringer@sherrardroe.com

Jeffrey B. Maletta
Nicole A. Baker
K&L GATES LLP
1615 L Street NW
Suite 1200
Washington, DC 20036
Jeffrey.Maletta@klgates.com
Nicole.Baker@klgates.com

*Attorneys for Jack R. Blair, Albert C. Johnson, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, Archie W. Willis, III, William Jeffries Mann, and James D. Witherington*

/s/ *R. Harold Meeks, Jr. w/p PSF*
R. Harold Meeks, Jr.
Amanda N. Wilson
JAMES-BATES-BRANNAN-GROOVER-LLP
3399 Peachtree Rd NE, Suite 1700
Atlanta, GA 30326
hmeeks@jamesbatesllp.com
awilson@jamesbatesllp.com

*Attorneys for Carter E. Anthony*

02952000.5                                                          20

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on July 10, 2014, a true and correct copy of the foregoing document was filed with the Court's ECF System and will be forwarded by electronic means to the following:

Harold Naill Falls, Jr.
FALLS & VEACH
1143 Sewanee Road
Nashville, TN 37220

John B. Veach, III
FALLS & VEACH
20 Cedarcliff Road
Asheville, NC 28803

/s/ *Peter S. Fruin*
OF COUNSEL

02952000.5